IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAUNDRA S., § | | |
|     PLAINTIFF, § | | |
| § | | |
| V. § | | CASE NO. 3:19-CV-2127-B-BK |
| § | | |
| COMMISSIONER OF THE SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
|     DEFENDANT. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for supplemental security income and disability insurance benefits under Title II of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the parties' cross-motions for summary judgment, Doc 18; Doc. 19, are before the Court for findings and a recommended disposition. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I.    BACKGROUND**

    **A.  Facts**

Plaintiff was 56 years old at the time of the administrative law judge's ("ALJ's") decision. Doc. 15-1 at 36. She has a general equivalency degree and past relevant work as a secretary, inventory control clerk, and director of student services. Doc. 15-1 at 55-58; Doc. 15-1 at 226. Plaintiff alleges that she became disabled in November 2014. Doc. 15-1 at 221.

In terms of Plaintiff's relevant medical treatment, she has a long history of (1) low back and neck pain; (2) neuropathy in all extremities; (3) difficulty sleeping; and (4) muscle spasms throughout her spine. *See* Doc. 15-1 at 292-93, 342, 348, 359-60; Doc. 15-1 at 609, 624, 684. This has resulted in diagnoses of chronic pain syndrome, fibromyalgia ("FM"), irritable bowel syndrome ("IBS"), lumbar radiculopathy, polyarthralgia, type II diabetes, cervical and lumbar stenosis, and degenerative disc disease. *See* Doc. 15-1 at 344, 349, 398; Doc. 15-1 at 426, 432; Doc. 15-1 at 690. Plaintiff has taken a variety of prescription medications and received numerous cervical and lumbar epidural steroid injections over the years in an effort to alleviate her pain and other symptoms. *See* Doc. 15-1 at 347-48, 355, 362, 372, 380, 384, 412; Doc. 15-1 at 638, 661-62.

In May 2018, Plaintiff saw Dr. Giovanni Geslani, M.D. for evaluation of her chronic back and joint pain. Doc. 15-1 at 693. Dr. Geslani noted that Plaintiff had 14 of 18 positive tender points, and his assessment was osteoarthritis, chronic back pain, FM syndrome, and degenerative disc disease at L5-S1. Doc. 15-1 at 694. Dr. Geslani indicated that Plaintiff had a number of symptoms consistent with FM and ordered laboratory tests and imaging studies to exclude alternate etiologies of her pain. Doc. 15-1 at 694-696.

### B. The ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine and diabetes type II," but did not have an impairment or combination of impairments that met or medically equaled the criteria of an Appendix 1 Listing. Doc. 15-1 at 24-25. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, including (1) lifting/carrying 20 pounds occasionally and ten pounds frequently; and (2) standing/walking/sitting for six hours during an eight-hour workday. Doc.

2

15-1 at 25. The ALJ concluded that Plaintiff could perform her past relevant work as a student services director and was thus not disabled within the meaning of the Act. Doc. 15-1 at 29.

## II.   APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational

expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III. ANALYSIS

#### A. Consideration of Plaintiff's FM

Plaintiff contends that the ALJ erred in failing to fully review the medical evidence and that her FM constituted an MDI which was severe and should have been accounted for in the RFC assessment. Doc. 18 at 15-16, 18-19. Defendant argues that the ALJ compensated for all of Plaintiff's limitations, and the resulting RFC was supported in light of Plaintiff's consistently

4

full range of motion, strength, and muscle tone in addition to her normal gait and deep tendon reflexes. Doc. 19 at 6-7.

Due to the complexity and number of disability claims involving FM, the Commissioner issued Social Security Ruling 12-2p ("SSR 12-2p") to provide guidance on how to develop evidence to establish an MDI of FM and how to evaluate FM in disability claims. *Titles II and XVI: Evaluation of Fibromyalgia*, SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). FM constitutes an MDI when medical evidence establishes that the claimant has: (1) a history of widespread pain in the back and all four quadrants of the body; (2) evidence, such as lab tests, that could rule out other disorders which could account for the claimant's symptoms and signs; and (3) either (a) at least 11 of 18 tender-point sites on physical examination or (b) repeated manifestations of six or more FM symptoms or co-occurring conditions, especially fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or IBS.[1] *Id.* at *3. The ALJ "will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane." *Id.* at *5.

Once FM is established as an MDI, if objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, the ALJ must evaluate the claimant's statements about her symptoms and limitations to determine the extent to which the symptoms limit her capacity for work. *Id.* To that end, the ALJ will assess the claimant's credibility by considering her activities, medications/treatments, and the like. *Id.*

---

[1] Other symptoms include muscle aches and weakness, constipation, numbness/tingling, and chronic fatigue syndrome. *See* SSR 12-2p, 2012 WL 3104869, at *3 n.9.

5

Here, Plaintiff is correct that the ALJ did not cite to or directly apply SSR 12-2p in analyzing her claim. Moreover, a review of the record suggests that her FM constitutes an MDI. Specifically, Plaintiff has longstanding complaints about pain affecting all four quadrants of her body, namely bilateral hands and legs, as well as her back. *See* Doc. 15-1 at 290-92, 308, 343-44; Doc. 15-1 at 447; Doc. 15-1 at 613, 619, 624, 628, 632, 636, 650, 655, 660-61, 665; Doc. 15-1 at 690, 701-02. Additionally, Dr. Geslani conducted numerous tests to rule out other causes of Plaintiff's symptoms, as he noted is required to attribute her pain to FM. Doc. 15-1 at 694-97, 715-18. Finally, Plaintiff (1) had 14 positive tender points on examination *and* (2) repeated manifestations of numbness/tingling, insomnia, IBS, muscle aches, and chronic fatigue syndrome. *See* Doc. 15-1, *passim*.

Nevertheless, the ALJ essentially followed SSR 12-2p's two-step process by (1) assessing whether the objective medical evidence showed that Plaintiff's FM could reasonably be expected to produce the pain and other symptoms she alleged; and (2) evaluating the intensity and persistence of Plaintiff's symptoms and determining the extent to which they limited her ability to work. SSR 12-2p, 2012 WL 3104869, at *5; *see* Doc. 15-1 at 28 ("After careful consideration of the evidence, the undersigned finds that the claimant's [MDIs] could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence . . ."). Doc. 15-1 at 28.

Then, because the ALJ found that the objective medical evidence did not fully substantiate Plaintiff's statements about her limitations — including the limitations directly associated with her FM — the ALJ assessed Plaintiff's credibility in light of her x-rays, medical source and treatment notes, and the state consultants' opinions. SSR 12-2p, 2012 WL 3104869,

6

at *5; *see* Doc. 15-1 at 28.  Thus, Plaintiff was not harmed by the ALJ's failure to articulate a specific finding that her FM is an MDI.

The Court disagrees with Plaintiff's argument that "[t]he ALJ also made no finding as to the effect of [Plaintiff's FM] upon her RFC."  Indeed, in assessing Plaintiff's RFC, the ALJ discussed her FM symptoms from November 2014 through May 2018 extensively.  *See* Doc. 15-1 at 25-28.  In particular, he addressed at great length Plaintiff's chronic neck and back pain, 14 out of 18 positive tender points, neuropathy, numbness and tingling in her arms and legs, memory difficulty, insomnia, IBS, and chronic pain syndrome.  Doc. 15-1 at 25-28.  This assessment encompassed virtually all of the medical evidence of record and is the "longitudinal" view contemplated by SSR 12-2p.  There is no error in this respect.

### B.  Severity of Pain

Plaintiff next argues that (1) the ALJ erred in discounting her complaints of pain because the record demonstrates that it is "constant, unremitting, and wholly unresponsive to therapeutic treatment"; and (2) the ALJ's finding that Plaintiff's reported symptoms were "not entirely consistent with the medical evidence and other evidence in the record" is not supported by substantial evidence.  Doc. 18 at 20-24.  Defendant asserts that the ALJ need not credit Plaintiff's subjective evidence over conflicting medical records which reflected that she had normal strength and gait and full range of motion.  Doc. 19 at 7-8.

The ALJ did not improperly evaluate Plaintiff's allegations of pain.  "Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).  The ALJ has discretion in determining whether a claimant is able to maintain work despite some pain, and the court must affirm that decision when it is supported by substantial evidence.  *Id.*  Indeed, as

7

Plaintiff observes, to be disabling, "pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.* (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)). Subjective complaints of pain must also be corroborated by objective medical evidence. *Id.*

In this case, the ALJ adequately articulated his reasons for finding Plaintiff's subjective complaints of pain to not be entirely credible. The ALJ pointed out that Plaintiff consistently exhibited normal reflexes, symmetrical motor strength, full strength in all extremities, and full range of motion in her back, bilateral upper extremities, and hips. Doc. 15-1 at 27-28. Additionally, the ALJ observed that Plaintiff's x-rays revealed some degenerative change and "listhesis" of the lumbar spine and subluxation and osteoarthritis of the left hand; however, there was no evidence of significant muscle weakness or atrophy or of any motor, reflex, sensory, or neurological deficit. Doc. 15-1 at 28. The ALJ also noted that Plaintiff could tandem walk and stand on her heels and toes, and there was no basis to limit the use of her upper extremities, observing that Plaintiff had the ability on examination to use a cell phone, zip a zipper, button a button, tie a bow, fasten a buckle, and use Velcro. Doc. 15-1 at 27-28. Plaintiff also testified at the administrative hearing that hot baths, a heating pad, and medication helped alleviate her pain, thereby demonstrating that the pain is responsive to treatment. Doc. 15-1 at 46-47; *Chambliss*, 269 F.3d at 522.

Plaintiff's activities of daily living further belie her claims of constant, unremitting pain. She reported in May 2018 that she had no difficulty (1) getting in and out of bed; (2) walking outdoors on flat ground; and (3) bathing herself, and she had only some difficulty (1) getting dressed; (2) reaching behind her head and back; (3) going to sleep, staying asleep due to pain, and having restful sleep; (4) using stairs; and (5) engaging in leisure time activities. Doc. 15-1 at 706. The only activity she reported doing with "much difficulty" and was "unable to do" was

8

work. Doc. 15-1 at 706. Upon consideration, substantial evidence supports the ALJ's findings with respect to Plaintiff's allegations of pain. *Chambliss*, 269 F.3d at 522.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 18, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 19, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on July 31, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).